**Michigan Supreme Court**
**Lansing, Michigan**

# Opinion

Chief Justice:
Maura D. Corrigan

Justices:
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Clifford W. Taylor
Robert P. Young, Jr.
Stephen J. Markman

**FILE JULY 20, 2004**

EILEEN HALLORAN, temporary
personal representative of the
estate of DENNIS J. HALLORAN,
DECEASED,

    Plaintiff-Appellee,

v                                                          No. 121523

RAAKESH C. BHAN, M.D., and
CRITICAL CARE PULMONARY
MEDICINE, P.C.,

    Defendants-Appellants,

and

BATTLE CREEK HEALTH SYSTEMS,

    Defendant.

_____

BEFORE THE ENTIRE BENCH

CORRIGAN, C.J.

In this interlocutory appeal, we must determine the meaning of the medical malpractice expert witness qualification requirements of MCL 600.2169(1)(a). Here, plaintiff's proffered standard-of-care witness did not possess the same board certification as defendant doctor, although both had the same subspecialty certificate in their respective fields.

We hold that MCL 600.2169(1)(a) requires that the proposed expert witness must have the same board certification as the party against whom or on whose behalf the testimony is offered. Because plaintiff's expert witness did not share the same board certification as the defendant doctor, we reverse the decision of the Court of Appeals that held to the contrary and reinstate the circuit court's order granting defendants' motion to strike.

## I. FACTUAL BACKGROUND AND PROCEDURAL POSTURE

Plaintiff's decedent, Dennis Halloran, was experiencing renal failure and died of cardiac arrest after being treated by defendant physician Raakesh Bhan in the emergency room at defendant Battle Creek Health Systems. Plaintiff brought a medical malpractice action, alleging that defendant physician Bhan's negligent treatment of Halloran's renal failure and subsequent cardiac arrest caused the death.[1] Bhan is board-certified in internal medicine by the American Board of Internal Medicine (ABIM) and also received a certificate of added qualification in

---

[1] Thus, this is not a case in which the administration of anesthetic is at issue.

2

critical care medicine[2] from the ABIM.  The parties do not dispute that the subspecialty certification is not a "board certification" for the purpose of the statute. It is not disputed that Bhan was practicing critical care at the time of the event in question.

Plaintiff proposed Dr. Thomas Gallagher as her standard-of-care witness.  Gallagher is board certified in anesthesiology by the American Board of Anesthesiology (ABA), and has received a certificate of added qualification in critical care medicine from the ABA. Gallagher is not board certified in internal medicine and has not received any training that would make him eligible for certification in internal medicine.

Defendants moved to strike Dr. Gallagher on the ground that he failed to satisfy the requirements of MCL 600.2169(1)(a) because he was not board certified in internal medicine.  The circuit court granted the motion to strike, finding that Gallagher was not qualified to testify

---

[2] "Critical care medicine" is defined as "[t]he medical knowledge that is applied to the care of patients in critical care units." *Attorneys' Dictionary of Medicine, Vol 2* (2002).

as an expert witness regarding the standard of care because he and Dr. Bhan did not share the same board certification.

A split Court of Appeals reversed and remanded, holding that because the subspecialty of critical care was shared by both physicians, plaintiff's trial expert fell within the requirements of the statute.[3] This Court granted leave to appeal on March 25, 2003, limited to the issue regarding the proper interpretation of MCL 600.2169(1)(a).[4]

## II. STANDARD OF REVIEW

This Court reviews de novo issues of statutory interpretation. *In re MCI*, 460 Mich 396, 413; 596 NW2d 164 (1999).

## III. ANALYSIS

When facing issues regarding statutory interpretation, this Court must discern and give effect to the Legislature's intent as expressed in the statutory language. *DiBenedetto v West Shore Hosp*, 461 Mich 394, 402; 605 NW2d 300 (2000); *Massey v Mandell*, 462 Mich 375, 379-380; 614 NW2d 70

---

[3] Unpublished opinion per curiam, issued March 8, 2002 (Docket No. 224548).

[4] 468 Mich 868 (2003). We further ordered *Grossman v Brown*, 468 Mich 869 (2003), to be argued and submitted with this case.

(2000).  This principle was recently explained in *Roberts v Mecosta Co Gen Hosp*, 466 Mich 57, 63; 642 NW2d 663 (2000):

> An anchoring rule of jurisprudence, and the foremost rule of statutory construction, is that courts are to effect the intent of the Legislature.  *People v Wager*, 460 Mich 118, 123, n 7; 594 NW2d 487 (1999).  To do so, we begin with an examination of the language of the statute. *Wickens v Oakwood Healthcare System*, 465 Mich 53, 60; 631 NW2d 686 (2001).  If the statute's language is clear and unambiguous, then we assume that the Legislature intended its plain meaning and the statute is enforced as written. *People v Stone*, 463 Mich 558, 562; 621 NW2d 702 (2001).  A necessary corollary of these principles is that a court may read nothing into an unambiguous statute that is not within the manifest intent of the Legislature as derived from the words of the statute itself.  *Omne Financial, Inc v Shacks, Inc*, 460 Mich 305, 311; 596 NW2d 591 (1999).

MCL 600.2169(1) provides:

> In an action alleging medical malpractice, a person shall not give expert testimony on the appropriate standard of practice or care unless the person is licensed as a health professional in this state or another state and meets the following criteria:

> (a) If the party against whom or on whose behalf the testimony is offered is a specialist, specializes at the time of the occurrence that is the basis for the action in the same specialty as the party against whom or on whose behalf the testimony is offered.  However, if the party against whom or on whose behalf the testimony is offered is a specialist who is board certified, the expert witness must be a specialist who is board certified in that specialty.

We must now determine whether MCL 600.2169(1)(a) requires that an expert witness share the same board

5

certification as the party against whom or on whose behalf the testimony is offered. We hold that it does.[5]

The Court of Appeals majority held that it is sufficient under the statute if the expert witness and the defendant doctor share only the same subspecialty, but not the same board certification. We disagree because this argument runs contrary to the plain language of the statute.[6]

---

[5] Contrary to the dissent's contention, we are not concluding that board certificates that are not relevant to the alleged malpractice have to match. There is simply no need to address that issue in this case because it is uncontested that the defendant physician was practicing internal medicine, not anesthesiology, when he allegedly committed malpractice. Thus, the defendant physician's internal medicine board certification is a "relevant" board certificate.

[6] The dissent argues that this straightforward application of the plain language of MCL 600.2169(1) renders MCL 600.2169(2) meaningless. MCL 600.2169(2), however, deals with *any* expert witness, while MCL 600.2169(1) deals only with expert witnesses regarding the standard of care. Expert testimony may encompass many subjects that do not involve the standard of care, such as causation. For an expert witness to be qualified to testify regarding the standard of care, however, the court must apply the requirements of MCL 600.2169(1). It would be impermissible for the trial court, when dealing with a proposed standard-of-care witness, to avoid the specific provisions of § 2169(1) and only apply the requirements of § 2169(2). See *Jones v Enertel, Inc*, 467 Mich 266, 270-271; 650 NW2d 334 (2002) (where a statute contains a general provision and a specific provision, the specific provision controls). Rather, when dealing with a proposed standard of care witness, the general provisions of § 2169(2) must be considered after a standard-of-care witness is qualified under the specific provisions of § 2169(1).

6

This interpretation is supported by the use of the word "however" to begin the second sentence. Undefined statutory terms must be given their plain and ordinary meanings, and it is proper to consult a dictionary for definitions. *Donajkowski v Alpena Power Co*, 460 Mich 243, 248-249; 596 NW2d 574 (1999); *Koontz v Ameritech Services, Inc*, 466 Mich 304, 312; 645 NW2d 34 (2002). *Random House Webster's College Dictionary* (2d ed) defines "however" as "in spite of that" and "on the other hand." Applying this definition to the statutory language compels the conclusion that the second sentence imposes an *additional* requirement for expert witness testimony, not an optional one. In other words, "in spite of" the specialty requirement in the first sentence, the witness must also share the same board certification as the party against whom or on whose behalf the testimony is offered.

There is no exception to the requirements of the statute and neither the Court of Appeals nor this Court has any authority to impose one. As we have invariably stated, the argument that enforcing the Legislature's plain language will lead to unwise policy implications is for the Legislature to review and decide, not this Court.[7] See

---

[7] Even if we were constitutionally empowered to consider our own public policy preferences in construing

(continued…)

*Jones v Dep't of Corrections*, 468 Mich 646, 655; 664 NW2d 717 (2003).

It is not disputed that defendant Bhan is board certified in internal medicine, but proposed expert witness Gallagher is not. MCL 600.2169(1)(a) requires that the expert witness "must be" a specialist who is board certified in the specialty in which the defendant physician is also board certified. Because the proposed witness in this case is not board certified in the same specialty as Bhan, MCL 600.2169(1)(a) prohibits him from testifying regarding the standard of care.

IV. CONCLUSION

Therefore, we reverse the decision of the Court of Appeals and reinstate the circuit court's order granting defendant's motion to strike. We remand this case to the

(continued…)

legislative mandates such as MCL 600.2169, the dissent's contention that our reading of § 2169 leads to undesirable results is wholly unpersuasive. Consider the facts of *this case*: there may be an enormous difference between critical care as practiced by an *internist* and critical care as practiced by an *anesthesiologist*. Indeed, one would expect that a patient requiring a medical diagnosis during critical care would rather be treated by an internist than an anesthesiologist. Likewise, one would expect that a patient being anesthetized during critical care would rather be treated by an individual trained in anesthesiology than one trained in internal medicine. Thus, the practice of critical care may be quite different depending on the physician's underlying specialization.

8

circuit court for further proceedings consistent with this opinion.

Maura D. Corrigan
Clifford W. Taylor
Robert P. Young, Jr.
Stephen J. Markman

**STATE OF MICHIGAN**

**SUPREME COURT**

EILEEN HALLORAN, temporary
personal representative of the
estate of DENNIS J. HALLORAN,
DECEASED,

    Plaintiff-Appellee,

v                                                                  No. 121523

RAAKESH C. BHAN, M.D., and
CRITICAL CARE PULMONARY
MEDICINE, P.C.,

    Defendants-Appellants,

and

BATTLE CREEK HEALTH SYSTEMS,

    Defendant.

_____

WEAVER, J. (*dissenting*).

I dissent from the majority's premature conclusion that plaintiff's standard-of-care expert is not qualified to testify under MCL 600.2169(1) regarding the appropriate standard of care in this case. Both plaintiff's expert and defendant Bhan specialized in critical care medicine. The majority holds, however, that plaintiff's expert must be, like defendant Bhan, board-certified in internal medicine because the majority states that Bhan was practicing internal medicine at the time of the alleged malpractice. *Ante* at 6 n 5.

The nature of the alleged malpractice cannot be confirmed with such certainty from the record, because the trial court never ruled on whether internal medicine was involved.  It is not clear that defendant Bhan was practicing internal medicine or critical care at the time of the alleged malpractice.  Apparently, even the majority is unable to determine with certainty the nature of the malpractice at issue, because the majority asserts that it is undisputed that defendant was practicing not only internal medicine at the time of the event in question, but also critical care medicine.  *Ante* at 6 n 5 and 3.

Whether defendant Bhan was practicing critical care or internal medicine or a mix of both is essential to determining whether plaintiff's expert is qualified to testify regarding the *appropriate* standard of care under MCL 600.2169(1).  MCL 600.2169(1)(emphasis added) states that:

> In an action alleging medical malpractice, a person shall not give expert testimony on the *appropriate standard* of practice or care unless the person is licensed as a health professional in this state or another state . . . .

"Appropriate," used as an adjective in the context of the statute means, "right for the purpose; suitable; fit; proper."  *Webster's New World Dictionary* (3d ed).  On the basis of an ordinary understanding of the language of the

2

statute, the Legislature's intent is that a standard of care expert must be able to testify regarding a fitting, suitable, and proper standard of care. From this, the significance of whether defendant Bhan was practicing critical care or internal medicine or both at the time of the alleged malpractice is obvious.

To help ensure that expert testimony regarding the standard of care will be appropriate to the underlying alleged malpractice event, MCL 600.2169(1)(a) requires that the expert must be a specialist in the same specialty as the defendant doctor. Further, if the defendant doctor is a board-certified specialist, the statute requires that the expert must be board-certified in that specialty. MCL 600.2169(1)(a) provides that the standard-of-care expert must meet the following criteria:

> If the party against whom or on whose behalf the testimony is offered is a specialist, specializes at the time of the occurrence that is the basis for the action in the same specialty as the party against whom or on whose behalf the testimony is offered. However, if the party against whom or on whose behalf the testimony is offered is a specialist who is board certified, the expert witness must be a specialist who is board certified in that specialty.

The majority concludes that plaintiff's expert witness is not qualified to testify under this subsection of MCL 600.2169(1) because he is not board-certified in internal

3

medicine. This conclusion assumes that defendant Bhan's board certification in internal medicine sets the appropriate standard of care about which plaintiff's expert will testify. The majority's assumption is premature.

Further, despite the majority's claims to the contrary, *ante* at 6 n 5, the majority's assumption trivializes the obvious legislative intent that the plaintiff's expert be able to testify about an *appropriate* standard of care, because, related or not to the underlying alleged malpractice event, the majority holds that plaintiff's expert must match defendant Bhan's board certification. The real scope of the majority's holding is revealed in its insistence that it must parse the meaning of the conjunction "however" and conclude that there is "no exception" to the MCL 600.1269(1)(a) requirements that specialties and board certifications match. I would hold that matching is required only where the specialty or board-certified specialty is appropriate for (right for the purpose of explaining) the standard of care about which the expert will be testifying in the case.

For these reasons, I would remand this matter to the circuit court for it to consider whether the nature of the underlying malpractice involved critical care medicine or internal medicine or both. This will allow the court to

4

determine whether plaintiff's standard-of-care expert, who specialized in critical care, but who was not a board-certified internist, is qualified to testify against defendant Bhan at trial under MCL 600.2169(1).

Elizabeth A. Weaver
Michael F. Cavanagh

**S T A T E   O F   M I C H I G A N**

**SUPREME COURT**

EILEEN HALLORAN, temporary
personal representative of the
estate of DENNIS J. HALLORAN,
DECEASED,

    Plaintiff-Appellee,

v                                                                        No. 121523

RAAKESH C. BHAN, M.D. and
CRITICAL CARE PULMONARY
MEDICINE, P.C.,

    Defendants-Appellants,

and

BATTLE CREEK HEALTH SYSTEMS,

    Defendant.
_____

KELLY, J. (*dissenting*).

I disagree with the majority's conclusion that the plaintiff's expert was not qualified to testify that the defendant doctor breached the standard of care. The majority's decision hinges on its assertion that the area of medical malpractice is uncontested and that it is internal medicine. This is incorrect.

Rather, the "uncontested" area of alleged medical malpractice is critical care. Plaintiff argued that critical care medicine was the relevant area of inquiry.

Defendant never disputed it. And the trial court never made a determination on the issue.

In misconstruing the record, the majority has made an improper factual determination. Once it is exposed, it becomes obvious that the outcome of the majority's decision is fatally flawed. The Court of Appeals decision should be affirmed and plaintiff's expert witness should be allowed to testify.

### A PRINCIPLED APPROACH TO THE STATUTE

MCL 600.2169(1) sets forth the requirements for experts who testify regarding the appropriate standard of care in medical malpractice cases. If the defendant doctor is a specialist, an expert witness must practice in the same specialty as the defendant. If the defendant is board-certified, the expert must be board-certified in the same specialty.

However, it is the medical specialty in which the defendant was practicing when the malpractice allegedly occurred that is the touchstone of an expert's qualification to testify regarding the "appropriate standard of care." Logically, testimony regarding the appropriate standard must pertain to the defendant's alleged breach of a specific standard of care. The statute comprehends that fact. MCL 600.2169(2)(d) requires that,

2

when "determining the qualifications of an expert witness in an action alleging medical malpractice," the court "shall . . . evaluate . . . [t]he relevancy of the expert witness's testimony."

In this case, the defendant doctor was board-certified in internal medicine. Although it is undisputed that the relevant standard of care involved critical care, it is not clear whether defendant's board certification in internal medicine was relevant to the malpractice claim. If it were, in order to testify under the requirements of MCL 600.2169, the standard-of-care witness would have to be a board-certified internist.

At the hearing on defendant's motion to strike, the trial court addressed neither the area of the alleged malpractice nor the relevance of defendant's board certification to that area. The court merely ascertained what paper credentials each doctor held and whether their board certifications matched. Left unresolved was whether the area of alleged malpractice must be identified before the application of MCL 600.2169.

At the hearing on the motion, defendants did not argue that internal medicine was being practiced when the alleged malpractice occurred. Having no interest in discussing the area of the alleged malpractice, defendants focused solely

3

on whether the board certifications possessed by the experts must match. In contrast, plaintiff argued that the area of medicine being practiced was the specialty of critical care medicine. Accordingly, plaintiff argued that one must consider the qualifications of the expert with regard to critical care medicine, not internal medicine.

Hence, the majority correctly notes that the issue of relevancy was uncontested. Plaintiff asserted that critical care was the relevant medical area. Defendant did not dispute that claim. Only plaintiff alleged the appropriate area of medical malpractice. Defendant chose instead to argue that the board certification of defendant and plaintiff's expert must match. Thus, defendant failed to dispute plaintiff's contention that the area of critical care medicine was the proper focus.

Plaintiff's expert planned to testify as a critical care doctor commenting on the care and treatment provided by another critical care doctor. He was prepared to testify that the defendant doctor breached several standards of care in critical care medicine.

A conclusion that the nature of the underlying malpractice claim has no bearing on an expert witness's qualification to testify would defy the statute and its purpose. An assumption that an expert witness must hold

4

the same board certification as that held by the defendant, even when it bears no relevance to the malpractice alleged, would be fallacious.

THE STATUTE AND THE LEGISLATURE'S INTENT

The pertinent statutory language is located in MCL 600.2169, which provides in part:

> (1) In an action alleging medical malpractice, a person shall not give expert testimony on the appropriate standard of practice or care unless the person is licensed as a health professional in this state or another state and meets the following criteria:
>
> (a) If the party against whom or on whose behalf the testimony is offered is a specialist, specializes at the time of the occurrence that is the basis for the action in the same specialty as the party against whom or on whose behalf the testimony is offered. However, if the party against whom or on whose behalf the testimony is offered is a specialist who is board certified, the expert witness must be a specialist who is board certified in that specialty.

The Legislature's true intent in writing it is revealed only when one reads § 2169 in its entirety.

In setting forth the requirements that an expert witness must meet before qualifying to testify regarding the standard of care in a medical malpractice case, the statute begins: "[A] person shall not give expert testimony on the *appropriate* standard of practice or care unless . . . ." MCL 600.2169 (emphasis added). Since the expert must give testimony about the *appropriate* standard

of care, it follows that the expert's certification must be in the area of the alleged malpractice. Any other board certification would be irrelevant.

The second sentence of MCL 600.2169(1)(a) begins with the adverb "[h]owever," indicating that the meaning of the language that follows "[h]owever" contrasts with that which precedes it. The word "however" is less likely to suggest an additional requirement, as the majority concludes, than to suggest a different requirement in an alternative set of circumstances.

Applied to this case, if the alleged malpractice were in internal medicine, the expert would have to be board-certified in that area because the defendant is board-certified in it. Alternatively, if the alleged malpractice involved a medical specialty in which defendant was not board-certified, the first sentence of the statute would control. If defendant specialized in that area, the expert witness would have to specialize in that area as well.

Furthermore, MCL 600.2169(1)(b)(i) requires that an expert have devoted, in the year preceding the date of the alleged injury, a majority of his or her professional time to: "The active clinical practice of the same health profession . . . and, if that party is a specialist, the active clinical practice of that specialty." "Specialty"

6

in this provision refers to a specific area of medical practice. This supports the conclusion that the necessary and relevant qualifications of an expert who will testify regarding the appropriate standard of care are determined by the area of the alleged malpractice.

Moreover, the statute continues:

> In determining the qualifications of an expert witness in an action alleging medical malpractice, the court shall, at a minimum, evaluate all of the following:
>
> (a) The educational and professional training of the expert witness.
>
> (b) The area of specialization of the expert witness.
>
> (c) The length of time the expert witness has been engaged in the active clinical practice or instruction of the health profession or the specialty.
>
> (d) The relevancy of the expert witness's testimony. [MCL 600.2169(2).]

Subsections 1 and 2 do not stand alone. Subsection 1 sets forth a threshold requirement applicable only to standard-of-care witnesses. But all expert witnesses, including standard-of-care witnesses, are subject to subsection 2. There is no language indicating that subsection 1 must be met before subsection 2 is applied to a standard-of-care witness. The qualification of any expert must be evaluated under subsection 2. Its criteria

7

ensure that the testimony of the expert provides assistance to the trier of fact.

The statute, read as a whole, bestows considerable discretion on the trial judge. Included is the authority to determine that the area in which the defendant is board-certified is relevant to the standard of care involved in the suit. MCL 600.2169(2). The first section of the statute is merely an additional requirement placed on standard-of-care witnesses.

Subsection 2 does not exclude standard-of-care witnesses from its purview. It reads: "In determining the qualifications of an expert witness in an action alleging medical malpractice . . . ." There is no language in this section to suggest that it is applicable to all but standard-of-care witnesses. Rather, the requirements apply to "an expert witness."

AVOIDING AN ABSURD RESULT

It is likely that cases will arise in which a doctor chooses to practice outside the doctor's area of board certification. A construction of the statute that ignores the area of the alleged malpractice could lead to absurd results in these cases. For example, assume a doctor is board-certified as an obstetrician-gynecologist (OB-GYN), but practices some dermatology, an area in which he is not

8

board-certified. Assume he is sued for negligently removing a mole from the shoulder of a patient. An interpretation that ignores relevance would require the patient to find an expert who is a board-certified OB-GYN practicing some of the time in dermatology to testify about the standard of care.

A doctor is not required by law to be board-certified in order to practice in a particular area of medicine. An OB-GYN can legally practice as a dermatologist without specialized training in dermatology. Even if an expert witness could be found to testify in the hypothetical case, he would have to testify that no special standard of care exists for an OB-GYN removing moles. His specialized expertise would be useless. A general practitioner, with no board certification, could testify as accurately about the applicable standard of care in the hypothetical case. If the statute were read to account for relevance, he would be allowed to do so.

A blind adherence to matching paper credentials would demonstrate a misunderstanding of the nature of an expert witness's testimony, which is to determine the reasonableness of the defendant doctor's conduct. The standard of care the doctor must meet is that of a doctor practicing in the area of medicine involved in the

malpractice claim. "[T]he patient normally understands and expects that physicians, acting within the ambit of their professional work, will exercise the skill, knowledge, and care, normally possessed and exercised by other members of their profession, of the same school of practice in the relevant medical community." 1 Dobbs, Torts, § 242, pp 631-632.

What is important is not the defendant physician's paper credentials, to the exclusion of all else. It is rather that the expert possesses the same knowledge regarding the applicable standard of care in the area of the alleged malpractice as the defendant doctor should possess. The Legislature recognized that a board-certified doctor may be held to a different standard of care than a doctor who is not board-certified. This is not relevant, however, if the area in which the doctor is board-certified is not related to the malpractice claim.

If the alleged malpractice involves a specialty area, such as dermatology, it is the standard of care applicable to a dermatologist that must be met by the defendant physician. It is not the standard of care of the defendant physician who happens to be a board-certified OB-GYN as

10

well as a dermatologist. See MCL 600.2912a(1)(b).[1] The defendant physician could certainly claim that his separate OB-GYN training influenced his decisions during the treatment. However, it is for the jury to decide whether the defendant breached the standard of care to which he is held, that of a dermatologist. There is no special standard of care for a board-certified OB-GYN practicing in dermatology.[2]

Future defendants, as well as plaintiffs, would be adversely affected by a decision to ignore relevance. The statutory provisions at issue refer to a defendant "against whom or on whose behalf" an expert offers testimony. MCL 600.2169(1)(a). Future defendants practicing outside their area of board certification would be required to find a similarly board-certified standard-of-care expert who is doing the same.

---

[1] MCL 600.2912a(1)(b) states that a plaintiff must prove that "[t]he defendant, if a specialist, failed to provide the recognized standard of practice or care within that specialty . . . ."

[2] I note that, just as the statute does not explicitly use the word "relevant," it also does not explicitly limit the board certification requirement to the medical field. If the courts were to ignore relevance, a medical doctor who was certified by the State Board of Law Examiners as an attorney must bring forth an expert who is also certified by that board. The same applies to one certified by the State Board of Education as a teacher, and others.

11

Like a plaintiff's standard-of-care expert, an appropriate witness would be more difficult to find. Once located, if at all, the witness could be asked to testify about an irrelevant standard of care. This would increase the cost and difficulty both of bringing and defending medical malpractice actions. Plaintiffs with a legitimate suit would be adversely affected, and the costs and complexity of defense for doctors and hospitals sued for malpractice would be increased.

Surely, the Legislature did not intend the statute to be read to reach this counterproductive result. What it did intend is that experts in medical malpractice cases be knowledgeable in the medical areas about which they testify. It also intended that courts consider the area of the alleged malpractice in applying the statute and assessing what board certification experts must possess. The statute's legislative history confirms this belief.

For example, the *Report of the Senate Select Committee on Civil Justice Reform* stated that the proposed statute was intended "to make sure that experts will have firsthand practical expertise *in the subject matter about which they*

12

*are testifying*."[3]  Judge Taylor, now Justice Taylor, cited

that language in *Schanz.*  The opinion noted:

> While MRE 702 authorizes expert testimony on
> the basis of "knowledge, skill, experience,
> training, or education," the statute operates to
> preclude certain witnesses from testifying solely
> on the basis of the witness' lack of practice or
> teaching experience *in the relevant specialty.*
> [*Report* at 24-25 (emphasis added).]

The Legislature's purpose in writing the expert

witness statute is undisputed:  it is to ensure that an

expert is familiar with the standard of care at the level

and in the area in which the malpractice is alleged to have

occurred.    Creating   a   rule   that   requires   board

certifications to match regardless of whether that area is

the subject of the malpractice would not be in keeping with

this  intent.    If  the  Legislature  meant  to  illogically

restrict some medical malpractice causes of action on such

an  arbitrary  basis,  it  could  and  would  have  done  so

clearly.   Because  it  did  not,  a  contrary  interpretation

would fly in the face of the intent underlying the statute

and, moreover, would produce an absurd result.

---

[3] *McDougall v Schanz*, 461 Mich 15, 25 n 9; 597 NW2d 148 (1999), quoting *McDougall v Eliuk*, 218 Mich App 501, 509 n 2; 554 NW2d 56 (1996) (Taylor, J., dissenting)(emphasis added).

## CONCLUSION

At issue in this case is the interpretation of MCL 600.2169(1)(a). I would hold that where a defendant specializes in the area of the alleged malpractice, but is not board-certified in that area, the first sentence of MCL 600.2169(1)(a) controls.

Where a defendant is board-certified in the area of the alleged malpractice, the second sentence of MCL 600.2169(1)(a) requires that an expert be board-certified in the same specialty. The statute does not require that a board certification unrelated to the occurrence that is the basis for the action be considered.

In this case, the defendant doctor was board-certified in internal medicine. However, it is not disputed that the relevant standard of care involved critical care medicine. Thus, given the arguments at the hearing on defendant's motion to strike, I would affirm the decision of the Court of Appeals to reverse the trial court's decision to strike plaintiff's expert.

Marilyn Kelly

14